### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| CATHY A. LUCY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-1083-TMP |
| | ) | |
| ANDREW M. SAUL, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Before the court is plaintiff Cathy A. Lucy's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons below, the decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   FINDINGS OF FACT

On December 6, 2016, Lucy applied for disability insurance benefits under Title II of the Act. (R. 163.) Lucy alleged disability beginning on September 30, 2015, due to problems with her right ankle and dyslexia. (R. 161; 181.) Lucy's application was denied initially and upon reconsideration by the Social

Security Administration ("SSA"). (R. 67; 80.) At Lucy's request, a hearing was held before an Administrative Law Judge ("ALJ") on July 18, 2018. (R. 34.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Lucy was not disabled from September 30, 2015, through the date of his decision. (R. 29.) At the first step, the ALJ found that Lucy had not "engaged in substantial gainful activity since September 30, 2015[.]" (R. 18.) At the second step, the ALJ concluded that Lucy suffers from a single severe impairment: right foot disorder post ankle tendon surgery. (R. 18.) At the third step, the ALJ concluded that Lucy's impairment does not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) Accordingly, the ALJ had to then determine whether Lucy retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Lucy] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except: [Lucy] can stand or walk for 30 minute intervals, for four hours per day. She can sit for 30 minute intervals, for six hours per day. [Lucy] can frequently balance, stoop, kneel, crouch, and crawl, but cannot climb ladders or walk on uneven surfaces. She must also avoid exposure to hazards, including unprotected heights. [Lucy] cannot engage in foot controls with the right foot.

(R. 21.) The ALJ then found at Step Four that Lucy was unable to

perform any of her past relevant work. (R. 26.) However, at Step Five the ALJ found that considering Lucy's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Lucy can perform. (R. 27.) Accordingly, on August 29, 2018, the ALJ issued a decision denying Lucy's request for benefits after finding that Lucy was not under a disability because she retained the RFC to adjust to work that exists in significant numbers in the national economy. (R. 27.) On April 3, 2019, the SSA's Appeals Council denied Lucy's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On May 7, 2019, Lucy filed the instant action. (ECF No. 1.) Lucy argues that: (1) the ALJ erred in weighing the medical opinion evidence in formulating her RFC; (2) the ALJ improperly evaluated her statements about the severity and nature of her symptoms; and (3) that the ALJ's decision at Step Five was both procedurally improper and not supported by substantial evidence. (ECF Nos. 12; 14.)

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a

hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the

Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

## B.   The Five-Step Analysis

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.  For purposes
> of the preceding sentence (with respect to any
> individual), "work which exists in the national economy"
> means work which exists in significant numbers either in
> the region where such individual lives or in several
> regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See

20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. <u>See</u> 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. <u>Id.</u> But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.   Medical Opinion Evidence**

Lucy argues that the ALJ misweighed the medical opinion evidence. Lucy asserts that the ALJ: (1) failed to give good reasons for rejecting the opinions of Lucy's treating physicians; (2) gave too little weight to the opinions of Lucy's treating physicians; (3) gave too little weight to the opinion of an examining physician; and (4) gave too much weight to the opinions of two state agency physicians.

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference." Norris v. Comm'r of

Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). "ALJs must evaluate every medical opinion [they] receive by considering several enumerated factors, including the nature and length of the doctor's relationship with the claimant and whether the opinion is supported by medical evidence and consistent with the rest of the record." Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011).

A treating source's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). Despite this, there is no categorical rule barring ALJs from giving greater weight to non-examining sources than treating or examining sources when doing so is appropriate given the available evidence. Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." (internal citations and quotations omitted)).

"In a battle of the experts, the agency decides who wins." <u>Justice v. Comm'r Soc. Sec. Admin.</u>, 515 F. App'x 583, 588 (6th Cir. 2013).

However, if the ALJ discounts the weight normally given to a treating source opinion, he or she must explain his or her decision. 20 C.F.R. § 404.1527(c)(2). "Where an ALJ does not give controlling weight to a treating source opinion, [he or she] weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6)." <u>Perry v. Comm'r of Soc. Sec.</u>, 734 F. App'x 335, 339 (6th Cir. 2018). "This does not require an exhaustive, step-by-step analysis, but merely good reasons for the ALJ's weighing of the opinion." <u>Id.</u> (internal citations and quotations omitted). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" <u>Dugan v. Comm'r of Soc. Sec.</u>, 742 F. App'x 897, 902-03 (6th Cir. 2018) (quoting <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 376 (6th Cir. 2013); <u>see also</u> SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Sixth Circuit has explained that, in addition to facilitating meaningful review, this rule "'exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that her

physician has deemed her disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 321 (6th Cir. 2015) (internal alterations omitted) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). "Because of the significance of the notice requirement . . . a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence[.]" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007). This is true "even where the conclusion of the ALJ may be justified based upon the record." Id. In contrast, when an ALJ rejects the opinion of a medical expert who is not a treating physician, the decision need only "say enough to allow the appellate court to trace the path of [the ALJ's] reasoning." Stacey, 451 F. App'x at 519 (internal citation and quotation omitted).

     1.   Dr. Susan Ishikawa and Dr. Timothy Sweo

Lucy argues the ALJ failed to give good reasons for his decision to give little weight to the opinions of her two treating physicians, Dr. Susan Ishikawa and Dr. Timothy Sweo. Lucy further

argues that the decision to give those physicians little weight was not supported by substantial evidence. The ALJ gave very similar reasons for rejecting both Dr. Ishikawa's and Dr. Sweo's opinions. With regards to Dr. Ishikawa, the ALJ stated that:

> "Dr. Ishikawa's opinion are [sic] specific to the claimant's worker's compensation claim and address the extent to which she can perform a past job, not whether she can perform other work with her functional limitations. Thus, Dr. Ishikawa's opinions are of limited evidentiary value to the undersigned's decision herein. As discussed above, the claimant demonstrated normal gait and station, mostly normal range of motion in her right foot/ankle, normal joints, normal strength throughout, normal motor skills, normal sensation, normal reflexes, normal pulses, intact neurological function, negative Homan's sign, and no signs instability [sic], or acute distress during the period at issue.

(R. 25.) The ALJ gave specific cites in the record for the medical evidence that he asserted supported his description of Lucy's symptoms.[1] (R. 25; 294-95; 302-03; 370-34; 396-99; 410-12; 426-28; 446-48; 453-56; 523-24; 550; 553-55; 561-63; 565-66.) The ALJ justified giving little weight to Dr. Sweo's opinion for the same

---

[1]Not all of these cited records contain all of the findings that the ALJ described in his opinion. A review of the records shows that Lucy's symptoms fluctuated as she recovered; Lucy had an antalgic gait through much of 2016 but in 2017 had returned to a normal gait. The ALJ discussed the cited medical evidence at greater length in his summary of Lucy's past medical history, acknowledging this fluctuation. (R. 21-5.)

reasons, except without reference to the opinion being specific to Lucy's worker's compensation claim. (R. 25.)

Lucy argues the ALJ impermissibly "played doctor" by evaluating whether the objective medical evidence was consistent with the functional limitations endorsed by Dr. Ishikawa and Dr. Sweo. "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010). Indeed, it is "precisely the ALJ's role" to evaluate functional limitations in light of the available evidence. Livingston v. Comm'r of Soc. Sec., 776 F. App'x 897, 901 (6th Cir. 2019). Lucy's argument to the contrary is not persuasive.

Lucy further argues that the medical findings the ALJ cited are not necessarily inconsistent with Dr. Ishikawa and Dr. Sweo's opinions. But there is an obvious tension between the extreme limitations on Lucy's ability to stand endorsed by both doctors and frequent findings from throughout the relevant period that Lucy had a normal gait, normal strength, mostly normal range of motion, and normal motor skills. The ALJ resolved this conflict in the evidence by concluding Dr. Ishikawa's and Dr. Sweo's opinions were not supported by the objective medical evidence. It is not this court's role to resolve (or reresolve) conflicts in the

evidence. See Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012).

Lucy further argues that the ALJ cited irrelevant medical findings such as a normal pulse or negative Homan's sign[2] in rejecting Dr. Ishikawa's and Dr. Sweo's opinions. Assuming without deciding that those medical findings are actually irrelevant,[3] Lucy's normal gait, normal strength, mostly normal range of motion, and normal motor skills would still constitute both good reasons and substantial evidence for rejecting both doctors' opinions. When an ALJ's decision gives many reasons for rejecting a treating physician's opinion, some good and some unpersuasive, the fact that there are some unpersuasive reasons does not mean the good reasons no longer count. Coldiron, 391 F. App'x at 440. The same reasoning defeats Lucy's next argument: that the ALJ erred in discounting the treating physician's opinions because they were formed in the course of evaluating whether Lucy could perform her

_____

[2]A Homan's sign is "calf pain at the dorsiflexion of the foot." St. Clair v. Comm'r of Soc. Sec. Admin., No. 1:13CV2045, 2014 WL 3508885, at *11 n.2 (N.D. Ohio July 15, 2014). It is often a sign of deep vein thrombosis. Id.

[3]The court is not persuaded these findings were irrelevant. Certainly Lucy is correct that a normal pulse is unrelated to her tendon injury. But the ALJ was also obligated to evaluate the extent to which Lucy's obesity aggravated her severe impairments. Shilo v. Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015). Obesity frequently affects the cardiovascular system. Id.

prior work or was eligible for worker's compensation. Assuming without deciding the ALJ did that, Lucy's normal gait, normal strength, mostly normal range of motion, and normal motor skills would still constitute both good reasons and substantial evidence for rejecting both doctors' opinions.

Finally, Lucy argues that the ALJ did not give any indication that he applied the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6) after determining that Dr. Ishikawa's and Dr. Sweo's opinions were not entitled to controlling weight. Lucy particularly objects to the ALJ's failure to acknowledge that Dr. Ishikawa and Dr. Sweo were specialists opining in their area of specialization. See 20 C.F.R. § 404.1527(c)(5). But an ALJ need not do an "exhaustive step-by-step analysis" of each individual factor to satisfy the rule, simply give "good reasons" for his or her decision. Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017), aff'd on other grounds, Biestek v. Berryhill, 139 S. Ct. 1148 (2019). The ALJ gave detailed and specific reasons why Dr. Ishikawa's and Dr. Sweo's opinions were inconsistent with the medical evidence in the record. That satisfied this requirement.

2. Dr. Samuel Chung

Lucy next argues that the ALJ erred in giving only "some" weight to the opinion of Dr. Samuel Chung, an examining physician.

The ALJ offered a number of reasons for discounting Dr. Chung's opinion, including that it was "vague and of limited evidentiary value to the opinion herein." (R. 24.) Dr. Chung opined that Lucy could not engage in "prolong[ed], walking, standing, stooping, squatting, bending, climbing, excessive flexion, extension, or rotation of her right ankle." (R. 551.) Dr. Chung also assigned Lucy a whole person impairment score. (R. 551.)

This court has previously decided a very similar case. In Blythe v. Berryhill, an examining physician (in fact the same examining physician, Dr. Samuel Chung) opined that a claimant could not engage in "'prolong[ed]' walking, standing, or postural activities" and gave the claimant a whole person impairment score. Blythe v. Berryhill, No. 18-1028-TMP, 2019 WL 4277000, at *7 (W.D. Tenn. Sept. 10, 2019) (alterations original). The ALJ gave little weight to that opinion, in part, because it was not framed in terms used by the SSA. The court found the ALJ's decision to do so was supported by substantial evidence. The court explained:

> What [the examining physician's opinion] means in the context of an RFC determination is not at all clear. A medical opinion framed in terms used by the SSA can be used to formulate an RFC, and then that RFC can be used to determine whether jobs exist in substantial numbers in the national economy that the claimant is able to perform. See Lancaster v. Comm'r of Soc. Sec., 228 F. App'x 563, 572 (6th Cir. 2007). Unless a physician frames his or her conclusions in terms used by the SSA though, it may not be possible for an ALJ to adapt a physician's

> opinion into a form that can support an RFC. Cf. HALLEX
> I-2-8-25(A) (forbidding ALJs from using "[n]on-
> prescribed standardized language in the rationale" of an
> opinion). This issue alone justifies the ALJ's decision
> to give little weight to [the examining physician's]
> opinion.

Id. The same reasoning applies here. The ALJ did not err in giving only some weight to Dr. Chung's opinion because the opinion did not take a form that would be useful to formulating an RFC.

### 3. Dr. Kanika Chaudhuri and Dr. Thomas Thrush

Lucy next argues the ALJ erred in assigning some weight to the opinions of Dr. Kanika Chaudhuri and Dr. Thomas Thrush, two state agency non-examining physicians. Dr. Chaudhuri and Dr. Thrush both opined Lucy could perform medium level work. (R. 25.) The ALJ assigned both opinions some weight because of Dr. Chaudhuri and Dr Thrush's program knowledge and because their opinions had some support in the objective medical evidence. (R. 25-6.) However, the ALJ found that both opinions failed to fully acknowledge the severity of Lucy's impairments based on the objective medical evidence. (R. 25-6.) The ALJ's ultimate RFC determination was significantly more restrictive that Dr. Chaudhuri's and Dr. Thrush's respective conclusions. (R. 25-6.)

Lucy offers little specific argument about why Dr. Chaudhuri's and Dr. Thrush's opinions are not entitled to some weight in the context of this case. Lucy spends much of her brief

arguing that the SSA should categorically not rely on the opinions of state agency non-examining physicians based on a variety of policy arguments. In support of those policy arguments, Lucy cites to a newspaper article discussing problems with Tennessee's disability determination process. The newspaper article criticizes both Dr. Chaudhuri's and Dr. Thrush's work specifically. Lucy further argues that the ALJ erred in considering Dr. Chaudhuri's and Dr. Thrush's program knowledge, arguing program knowledge is not a permissible consideration.

This court has an extremely limited role in the Social Security disability determination process: to evaluate whether the ALJ's decision was supported by substantial evidence and whether the ALJ used the correct legal criteria to make his or her decision. See, e.g., Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018). It is not free to restructure the disability determination process to suit its policy preferences. Similarly, the court generally cannot consider evidence outside of the administrative record, such as newspaper articles. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016). Under governing regulations, "an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources." Reeves v. Comm'r of Soc. Sec., 618 F. App'x

267, 274 (6th Cir. 2015). Governing regulations also permit ALJ's to consider program knowledge. 20 C.F.R. § 404.1527(c)(6). Lucy's objection is not supported by law.

**D.    Subjective Symptom Severity**

Lucy argues that the ALJ improperly evaluated her testimony about the nature and severity of her symptoms. The ALJ found that Lucy's testimony about the nature and severity of her symptoms was not consistent with the objective medical evidence or with her reported activities of daily life. (R. 24.)

ALJs are required to consider a claimant's testimony about the nature and severity of the claimant's symptoms. 20 C.F.R. § 416.929(a); see also Jines v. Berryhill, No. 18-1234-TMP, 2019 WL 4644000, at *3 (W.D. Tenn. Sept. 24, 2019). In considering such testimony, the ALJ evaluates whether a claimant's alleged symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. If this is the case, the ALJ then evaluates whether the "intensity, persistence, and limiting effects of [a claimant's] symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c).

Lucy's arguments here are much the same as before — that her normal gait, normal strength, mostly normal range of motion, and

normal motor skills are not inconsistent with extreme limitations on her RFC. However, there is a tension between Lucy's description of her symptoms and the objective medical evidence and the ALJ was empowered to resolve that tension. It is still not this court's role to second guess the ALJ's resolution of conflicts in the evidence. Ulman, 693 F.3d at 713.

Moving to Lucy's new contentions, Lucy argues that the ALJ misinterpreted MRI and x-ray test results from before her ankle surgery in determining that her testimony about the nature and severity of her symptoms was not consistent with the evidence of record. But those test results were discussed in a summary of Lucy's medical history introducing the specific medical findings from the relevant period that justified the ALJ's conclusion. (R. 24.) Nothing suggests the ALJ took those test results to be indicative of Lucy's RFC during the relevant period.

Lucy asserts that the ALJ erred in determining that her activities of daily life indicated that she could perform basic work-related tasks. (R. 24.) The ALJ stated that Lucy's ability to care for two young children, prepare simple meals on her own, perform light household chores, handle her own personal care, drive, and leave the house independently all supported a conclusion she could perform basic work-related tasks. (R. 24.) Lucy argues

that the ALJ should have credited her hearing testimony that her ability to handle those activities of daily life was very limited. (R. 40-50.)

The ALJ found that "the information provided by the claimant generally may not be entirely reliable" in light of the evidence in the record. (R. 26.) This appears to refer to Lucy's hearing testimony. "An ALJ may discount a claimant's credibility when the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 381 (6th Cir. 2015) (internal quotations and citations omitted). Because "the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying," reviewing courts "accord the ALJ's determinations of credibility great weight and deference." Downs v. Comm'r of Soc. Sec., 634 F. App'x 551, 556 (6th Cir. 2016). "Claimants challenging the ALJ's credibility findings face an uphill battle." Nettleman v. Comm'r of Soc. Sec., 725 F. App'x 358, 360 (6th Cir. 2018) (internal quotations, citations, and alterations omitted). Lucy has not raised arguments that could justify this court rejecting the ALJ's adverse credibility finding about her testimony. Given this, the ALJ's failure to acknowledge Lucy's claimed limitations regarding her activities of daily life was not in error.

**E.  Vocational Expert**

Lucy argues that the ALJ's decision at Step Five that there were jobs in significant number in the national economy that she could perform was in error. Lucy makes two related arguments: (1) that the ALJ erred procedurally in not excluding the testimony of Nancy Hughes, a vocational expert, because of Hughes's lack of recent experience in job placement; and (2) that the ALJ's decision at Step Five was not supported by substantial evidence, in part because Hughes's testimony was unreliable. Because reversal is warranted based on Lucy's substantial evidence argument, the court does not reach her procedural argument.

"The Commissioner has the burden at step five of the disability analysis of showing that there are a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile." Collins v. Comm'r of Soc. Sec., 357 F. App'x 663, 670 (6th Cir. 2009). "This mandates the Commissioner to 'make a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs.'" Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017) (internal alterations omitted) (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 238 (6th Cir. 2002)). One way the Commissioner may meet his or her burden is to elicit the testimony of a

vocational expert. Maze v. Colvin, No. 16-CV-1138-TMP, 2018 WL 3599968, at *6 (W.D. Tenn. July 27, 2018). Such testimony is particularly useful when a claimant, like Lucy, has a combination of significant exertional and nonexertional limitations. Amir, 705 F. App'x at 451. "A [vocational expert's] testimony in response to a hypothetical question accurately portraying a claimant's vocational abilities and limitations can provide substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process." Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 715 (6th Cir. 2013).

Although a vocational expert's testimony can be enough for the Commissioner to meet his or her burden, the Supreme Court has made clear that ALJs are obligated to evaluate the reliability of a vocational expert's opinion on a case-by-case basis. Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019). One method of testing a vocational expert's reliability is to examine the expert's "sources and methods — where she got the information at issue and how she analyzed it and derived her conclusions." Id. An ALJ's conclusion that an expert's testimony is reliable is reviewed under the substantial evidence standard. Id.

The ALJ determined that Lucy could perform work that exists in significant numbers in the national economy because Hughes

testified that a claimant with Lucy's RFC and vocational profile could work as a tanning salon attendant, blood donor unit assistant, or ticket seller. (R. 28.) Though Lucy objected to the reliability of this testimony, the ALJ rejected Lucy's procedural and substantive arguments. (R. 15; 28.)

There are two major problems with the reliability of Hughes's testimony. First, Hughes's testimony that a claimant with Lucy's RFC could work as a ticket seller, blood donor unit assistant, or tanning salon attendant was contradicted by her testimony on cross-examination. An RFC that limits the time a claimant can sit or stand to a particular interval necessarily limits the jobs a claimant can perform to those which give employees a sit/stand option. Wyczlinski v. Astrue, No. 3:09-CV-481, 2011 WL 798135, at *8 (S.D. Ohio Mar. 1, 2011). The ALJ recognized this and incorporated a sit/stand option into the hypothetical he posed to Hughes. (R. 52-3.) Hughes testified that a person requiring a sit/stand option could work as a ticket seller, blood donor unit assistant, or tanning salon attendant. (R. 53.) Yet on cross examination, Hughes conceded that tanning salon attendants would not have the option to sit or stand as needed because their tasks depend on customer flow. (R. 57-8.) Similarly, in response to a question asking about whether blood donor unit assistants "would

only have to stand for up to 30 minutes at a time and would be able to take breaks as needed," Hughes testified:

> I think so, yes. Because they're interviewing individuals that are coming in to give blood. They may have some ability to sit while doing that or give them a tablet or whatever electronically now in some cases. I think it's reasonable. You know sit/stand and the hours you can't absolutely predict, but it – those job duties in general would allow for some flexibility. Maybe not totally at will for that job, but some flexibility in it.

(R. 55-6.) There is an obvious inconsistency between expert testimony that blood donor unit assistants have the option to sit or stand versus expert testimony that says "[y]ou know sit/stand and the hours you can't absolutely predict, but it – those job duties in general would allow for some flexibility. Maybe not totally at will for that job, but some flexibility in it." (R. 55-6.) Despite Hughes recanting her previous testimony about tanning salon attendants and expressing doubt about her ability to predict whether blood donor unit assistants have a sit or stand option,[4] the ALJ based his decision on Hughes's initial answer that a claimant with Lucy's RFC could work as a ticket seller, blood donor unit assistant, or tanning salon attendant without even acknowledging the discrepancy in testimony. (R. 28.)

---

[4]To be frank, this characterization may be too generous. One might read Hughes's statement as expressing doubt about her ability to predict whether jobs have sit or stand options in general.

This case is similar to Wyczlinski v. Astrue, No. 3:09-CV-481, 2011 WL 798135 (S.D. Ohio Mar. 1, 2011). In Wyczlinski, a vocational expert identified several jobs a claimant could perform based both on his personal experience in job placement and statistical data from a broad range of employers. Id. at *7-8. Then, on cross examination, the vocational expert "immediately retreated from this position" and added a series of qualifiers that made the expert's ultimate conclusion "at best ambiguous[.]" Id. The ALJ in Wyczlinski relied on the vocational expert's initial, confident testimony about the jobs the claimant could perform without recognizing the expert's conclusions collapsed on cross examination. Id. The court reversed and remanded for lack of substantial evidence. Id. The ALJ made the same mistake here.

The second major problem with Hughes's testimony is that Hughes's "sources and methods" were clearly unreliable. Biestek, 139 S. Ct. at 1157. Hughes's sole basis for testifying that ticket sellers, blood donor unit assistants, and tanning salon attendants each had the option to sit or stand (for the brief period she took that position) was her personal experience working in job placement for individuals with disabilities.[5] (R. 56-7.) Hughes testified

---

[5]At one point in Hughes's testimony, she said her opinion was also based on the Dictionary of Occupational Titles ("DOT"), an "an authoritative vocational reference source" frequently relied on by

that she "know[s] of no studies that have actually gone in and studied to give me more official information[.]" (R. 56-7.) Hughes also testified that she had not worked in job placement for approximately ten years.[6] (R. 57.) Given that the sole basis for Hughes's testimony was her job placement experience, the fact Hughes had not worked in job placement for a decade rendered her testimony unreliable.

The Commissioner argues that Hughes's lack of job placement experience in the last ten years does not matter because Lucy "has not presented any evidence that the jobs have changed in material ways in the recent past." (ECF No. 13.) But Lucy does not bear the burden of proof at Step Five; the Commissioner does. Collins, 357 F. App'x at 670. Furthermore, common sense dictates that knowledge erodes over time. It is frankly hard to imagine how even an expert with recent job placement experience could testify to the issue here based solely on personal knowledge — Hughes testified about

_____

the SSA in Step Five determinations. See Wix v. Astrue, No. 3:08-CV-1222, 2010 WL 520565, at *7 (M.D. Tenn. Feb. 9, 2010) (discussing the DOT). But, as the ALJ observed in his opinion, the DOT says nothing about sit/stand options, so the DOT could not have been the basis for Hughes's testimony. (R. 28.)

[6]The Commissioner observes in his brief that Hughes testified that she has performed other work in her field within the last ten years. (R. 57.) But in response to follow-up questioning, Hughes acknowledged that the personal experience she was using as the basis of her testimony was at least ten years old. (R. 57.)

what employers across the national economy required, and there are a great many tanning salons, blood donation facilities, and places that sell tickets in this country. (R. 28.) The idea an expert could do so without having worked in job placement for a decade is more than a reasonable mind can accept. The Commissioner's decision at Step Five was not supported by substantial evidence.

### III.   CONCLUSION

For the reasons above, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 20, 2019
Date